Filed 11/3/15  P. v. McCullah CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B258498 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA075301) |
| v. | |
| DAVID L. McCULLAH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerard A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

David McCullah was convicted of second degree robbery and assault with a deadly weapon. He contends the trial court erred in permitting a psychiatrist, who had reviewed appellant's mental competency report, to testify. Appellant argues that the psychiatrist's testimony violated the judicially declared rule of immunity, which prohibits consideration of any fruits of a mental competency examination. For the reasons stated below, we conclude there was no reversible error. Accordingly, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Underlying Offenses[1]

On August 9, 2007, appellant assaulted and robbed Erin Hauck outside a bar. He stabbed Hauck's left wrist with a knife and stole her purse. Appellant was arrested shortly afterward. After being advised of his rights and informed he was being arrested for robbery, appellant told the police, "'I didn't rob anybody. I'm a fucking drunk. I drink all day.'" When the police said he had been recorded running with a purse, appellant told the officers, "'I did 20 fucking years. You think I give a fuck about this bullshit? This ain't shit.'"

Police recovered Hauck's purse from appellant's apartment. They also recovered a shotgun and a knife. Appellant told the officers that everything in the apartment belonged to him. In a subsequent field showup, Hauck identified appellant as her attacker.

---

[1]     Appellant does not contest the evidence presented in the guilt phase, and challenges only the testimony of a prosecution witness during the sanity phase of his trial. Accordingly, we provide an abbreviated summary of the facts of the underlying offenses.

Appellant was charged with second degree burglary and assault with a deadly weapon (Pen. Code, §§ 211, 245, subd. (a)(1)).[2] He entered a plea of not guilty by reason of insanity. The trial court ordered a mental competency evaluation. Appellant was found not competent, and placed in Patton State Hospital.

On October 31, 2012, Patton State Hospital filed a certification of mental competency with the trial court. That same day, the court found appellant's competency had been restored, and reinstated criminal proceedings. Appellant waived his right to a jury trial. Following a trial, the court found appellant guilty as charged.

B.      Sanity Phase of the Trial

Before the sanity phase began, the defense moved to preclude Dr. Gordon Plotkin from testifying about appellant's sanity, arguing that Dr. Plotkin should not be allowed to testify because he had reviewed the reports from appellant's mental competency evaluations and had used them in forming his opinion. The court held an Evidence Code section 402 hearing during which Dr. Plotkin testified he was prepared to base his opinion on appellant's sanity solely on independently admissible evidence, such as treatment records and jail records. Nevertheless, the trial court granted the defense's motion and precluded Dr. Plotkin from giving an opinion as to appellant's sanity. However, the court permitted Dr. Plotkin to testify for the limited purpose of impeaching the defense witness's expert opinion. The court ruled that Dr. Plotkin could rely only on independently admissible evidence, such as jail records.

Dr. Suzanne Dupeé, a psychiatrist with expertise in insanity evaluations, testified for the defense. (See Evid. Code, § 522 ["The party claiming that any

_____

[2]      All further statutory citations are to the Penal Code, unless otherwise stated.

3

person, including himself, is or was insane has the burden of proof on that issue."].) Dr. Dupeé reviewed a transcript of the preliminary hearing, police reports, medical records from Los Angeles jail, and psychiatric evaluations. She also interviewed appellant for an hour on July 31, 2013.

During Dr. Dupeé's interview of appellant, he told her he had not been taking his medications during the incident with Hauck. Appellant stated that when he was at the bar, "the TV was sending him messages" that Hauck "had a phone that had his thoughts on the phone." Appellant tried to turn off the television, but the bartender asked him to leave. He left and waited outside for Hauck so he could get the phone from her. Once he took the phone, he ran and was eventually caught by the police.

Dr. Dupeé concurred with a prior diagnosis of schizophrenia appellant had received. She opined it was likely appellant had experienced an acute exacerbation of his psychosis when he stopped taking his medications. Based on her review of the records and the interview, she concluded appellant was insane and experiencing a delusion at the time of the offense, rather than malingering. On cross-examination, she acknowledged that appellant's conduct during his arrest was not consistent with appellant's experiencing a delusion or a psychotic episode.

Dr. Plotkin disagreed with the methodology Dr. Dupeé used to arrive at her opinion. According to Dr. Plotkin, Dr. Dupeé failed to consider evidence -- "red flags" -- indicating that appellant was malingering. Dr. Plotkin stated it was unusual for a schizophrenic person to frequently request specific medications and placements, as the jail records showed appellant had done. Another indication of malingering was appellant's selective recall of information: during Dr. Dupeé's interview, appellant was able to provide identifying information, such as his date

4

of birth, but the jail records noted several occasions when appellant could not provide similar information.

Dr. Plotkin also disagreed with Dr. Dupeé's assumption that all of appellant's statements to her were true. He explained that assuming everything a defendant says is true is not an accepted methodology within the psychiatry community. Dr. Plotkin further explained that appellant's description about the incident was not consistent with schizophrenia. For example, schizophrenics rarely experience visual hallucinations of the type appellant claimed to have had while at the bar.

Following the testimony and closing argument, the trial court found appellant had not meet his burden of proving that he was insane at the time he committed the charged offenses.

C.    Sentencing

The court sentenced appellant to 36 years to life on the burglary count. It imposed the same sentence on the assault count, and stayed it pursuant to section 654. Appellant filed a timely notice of appeal.


**DISCUSSION**

Under the judicially declared rule of immunity, a defendant's statements to a competency evaluator and any fruits of the mental competency examination cannot be used at the trial on the issue of the defendant's guilt. (*People v. Jablonski* (2006) 37 Cal.4th 774, 802-803.) In *In re Hernandez* (2006) 143 Cal.App.4th 459 (*Hernandez*), the appellate court applied the rule of immunity to exclude the testimony of two competency evaluators during the sanity phase of trial. (See *id*. at pp. 463-464.) The court also excluded the testimony of another psychiatrist who had reviewed the results of the competency evaluations, as "it [was] impossible to

determine to what extent the competency evaluation results affected [the witness's] opinion of [defendant's] sanity." (*Id*. at p. 464.) The court noted that the witness "frequently referred to the observations and conclusions of the competency evaluators." (*Id*. at p. 474.)

Citing *Hernandez*, appellant contends that Dr. Plotkin's testimony should have been excluded under the rule of immunity, noting that Dr. Plotkin had admitted reviewing the mental competency evaluations. We disagree. In *Hernandez*, the psychiatrist had opined that the defendant understood "'what he was doing was illegal and wrong,'" and the appellate record suggested the psychiatrist likely relied upon the mental competency evaluations in forming her opinion about the defendant's sanity. (*Hernandez*, *supra*, 143 Cal.App.4th at pp. 468, 474.) In contrast, here, Dr. Plotkin's testimony addressed primarily the deficiencies in Dr. Dupeé's methodology, and he relied on admissible evidence.

Unlike in *Hernandez*, it is possible to determine the extent to which the mental competency evaluations affected Dr. Plotkin's testimony. As appellant acknowledges, Dr. Plotkin testified that his disagreement with Dr. Dupeé's opinion was not based on the mental competency reports. In contrast to the psychiatrist in *Hernandez*, Dr. Plotkin did not refer to the observations and conclusions of the competency evaluators. Rather, Dr. Plotkin's testimony was based on independently admissible evidence, such as jail records, appellant's statements to Dr. Dupeé during her interview, and general knowledge of psychiatric methodologies and diagnoses. Thus, Dr. Plotkin's testimony did not rely on the mental competency evaluations, and accordingly, it was not inadmissible under the rule of immunity.

We reject any suggestion that the rule of immunity disqualifies any witness who has seen a mental competency report from testifying. Such an interpretation

6

was implicitly rejected in *Hernandez*, as there, the appellate court analyzed the extent to which the expert witness's opinion was affected by the mental competency reports. Rather, the rule of immunity precludes a mental competency evaluator from testifying, and precludes any witness who relies upon the contents of the mental competency report(s) from testifying. Here, Dr. Plotkin did not rely upon the contents of the mental competency reports in reaching his conclusion challenging Dr. Dupeé's opinion. Thus, the trial court did not err in permitting Dr. Plotkin to testify.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


MANELLA, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

7